1

2

3

4

5

6

7

8            IN THE UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JAMES M. MILLIKEN,

11          Plaintiff,                No. 2:10-cv-1412 TLN JFM P

12      vs.

13   MR. LIGHTFIELD, et al.,          <u>ORDER AND</u>

14          Defendants.               <u>FINDINGS & RECOMMENDATIONS</u>

15   _____/

16          Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to

17   42 U.S.C. § 1983.  This action is proceeding on plaintiff's first amended complaint, filed

18   October 8, 2010.  Plaintiff claims that his rights under the Eighth Amendment were violated by

19   deliberate indifference to his health and safety.  This matter is before the court on cross-motions

20   for summary judgment pursuant to Fed. R. Civ. P. 56.[1]

21   /////

22   /////

23

24        [1]  By order filed June 18, 2012 (ECF No. 60), the deadline for filing dispositive motions
     was extended to September 28, 2012.  On September 28, 2012, plaintiff filed a motion for
25   extension of time to file a motion for summary judgment (ECF No. 69).  Plaintiff filed a motion
     for summary judgment on the same day (ECF No. 70).  His motion for extension of time is
26   mooted by the filing of his motion for summary judgment and will therefore be denied.

SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically store information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, . . ., is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to

1   establish the existence of this factual dispute, the opposing party may not rely upon the

2   allegations or denials of its pleadings but is required to tender evidence of specific facts in the

3   form of affidavits, and/or admissible discovery material, in support of its contention that the

4   dispute exists.  See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11.  The opposing

5   party must demonstrate that the fact in contention is material, i.e., a fact that might affect the

6   outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

7   248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

8   1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

9   return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

10  1436 (9th Cir. 1987).

11          In the endeavor to establish the existence of a factual dispute, the opposing party

12  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

13  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

14  versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

15  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

16  genuine need for trial.'"  Matsushita, 475 U.S. at 587 (citations omitted).

17          "In evaluating the evidence to determine whether there is a genuine issue of fact,"

18  the court draws "all reasonable inferences supported by the evidence in favor of the non-moving

19  party."  Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011).  It

20  is the opposing party's obligation to produce a factual predicate from which the inference may

21  be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985),

22  aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing

23  party "must do more than simply show that there is some metaphysical doubt as to the material

24  facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the

25  nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation

26  omitted).

1    With their motion for summary judgment, defendants provided to plaintiff notice

2    of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil

3    Procedure (ECF No. 66).  See Woods v. Carey, 684 F.3d 934, 940 (9th Cir. 2012); Rand v.

4    Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc),  cert. denied, 527 U.S. 1035 (1999), and

5    Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

6    ANALYSIS

7    I.  Facts[2]

8    At all times relevant to this action, plaintiff was a state prisoner housed at

9    California State Prison-Sacramento (CSP-Sacramento).  Defendants D. Lightfield and J. Lewis

10    were correctional sergeants at CSP-Sacramento and defendant Taylor was a plant operations

11    supervisor with the California Department of Corrections and Rehabilitation (CDCR).

12    On or about July 1, 2009, a pipe chase between two cells in an administrative

13    segregation unit at CSP-Sacramento started leaking.  Deposition of James M. Milliken,

14    December 6, 2011 (Milliken Dep.) at 10:14-16; 16:18-25.  Plaintiff was housed in the unit where

15    the pipe was leaking.  Id.  Defendants Lewis and Lightfield were sergeants assigned to the

16    building.  Id. at 16:2-8.  The administrative segregation unit was "built using plumbing

17    technology which proved to be defective" and "[l]eaks were very common."  Decl. of R. Taylor

18    in Support of Motion for Summary Judgment, filed September 27, 2012 (ECF No. 64-6) at ¶ 4.

19    Leaks were repaired regularly and often recurred within a few days.  Id. at ¶ 7.  Ultimately "the

20    contractor did a retrofit, replacing the plumbing, at no charge to the State of California."  Id. at ¶

21    8.

22    On August 21, 2009, August 22, 2009, and August 26, 2009, plaintiff sent

23    requests for interviews concerning the leaky pipe chase to, respectively, defendants Taylor,

24    Lewis, and Lightfield.  Exs. 2-4 to Plaintiff's Motion for Summary Judgment, filed September

25

26    [2] Except as specifically noted, the following facts are undisputed.

28, 2012 (ECF No. 70).  In the August 26, 2009 request, addressed to defendant Lightfield, plaintiff asserted that he had previously spoken with defendants Lewis and Lightfield about the leak and asked on a number of occasions to be moved to a different cell.  Plaintiff's Ex. 4.

On August 31, 2009, plaintiff slipped and fell in water that had leaked from the pipe chase.  Declaration of P. Maloney in Support of Motion for Summary Judgment (Decl. of Maloney) (ECF No. 64-5) at ¶ 3.  The water in which plaintiff slipped was "a puddle about three and one-half feet long and six to eight inches wide" and "ran from under a door concealing the pipe chase to the middle of the tier where a drain was located."  Id.

At the time of the fall, plaintiff had a history of back problems.  Declaration of James Milliken in Support of Motion for Summary Judgment, filed September 28, 2012 (ECF No. 70), at ¶ 16.  Plaintiff injured his back in the fall.  Id. at ¶ 18.  X-rays taken two days after the fall "showed degenerative spondulotic changes in the lumbar spine and reduced interveterbral disc heights at the L5-S1."  Id.  An MRI taken on February 25, 2010, "showed degenerative disc disease and anterior disc protrusions with fissures of anulus fibrosus from the L2-L4 levels."  Id.  None of the foregoing showed in x-rays taken on July 15, 2009, before plaintiff's fall.  Id. at ¶19.  Plaintiff saw a doctor on September 4, 2009, and was prescribed methadone for pain.  Id. at ¶ 20.  Plaintiff also began to experience wrist and neck pain after the fall.  Id. at ¶ 21.  X-rays of plaintiff's neck taken in January 2010 showed "physiological subluxation at the C2-C3 level and retrolisthesis at the C3-C6 level."  Id.  X-rays of plaintiff's wrist taken in January 2011 "showed degenerative changes at the radial carpal joint."  Id.  Plaintiff went to physical therapy for his neck and writ, and permanently wears a wrist brace on his left wrist.  Id.  Plaintiff is left handed and now struggles on a daily basis with simple tasks, including writing, exercising, and sleeping.  Id.

The parties dispute whether there was an infestation of mosquitoes as a result of the leak and associated standing water.  Compare Decl. of Taylor, filed September 27, 2012 (ECF No. 64-6) at ¶ 10 with Ex. 3 to Plaintiff's Motion for Summary Judgment, filed September

1  28, 2012 (ECF No. 70).  Plaintiff did not get ill as a result of mosquito bites during any time

2  relevant to this action.  Milliken Dep. 27:12-15.

3         The parties also dispute how long it took to repair the leak.  Plaintiff avers that the

4  leak lasted for a total of ninety-eight days.  Decl. of Milliken at ¶ 15, 25.  Defendants dispute this

5  with evidence that no leak in the relevant housing unit "was allowed to exist for up to 90 days."

6  Decl. of Taylor (ECF No. 70) at ¶ 12.

7  II.  The Parties' Cross-Motions

8         Defendants seek summary judgment on the grounds that the facts establish at

9  most negligence and not a violation of the Eighth Amendment.  Plaintiff argues that the facts do

10  establish a violation of the Eighth Amendment and that he is entitled to summary judgment.

11         To prevail on an Eighth Amendment claim based on deliberate indifference to

12  health and safety, plaintiff must prove two elements: that he was incarcerated under conditions

13  posing a substantial risk of serious harm; and that the defendant was deliberately indifferent to

14  that risk.  Farmer v. Brennan, 511 U.S. 825, 834 (1994).  The first element, an objective one, is

15  "contextual and responsive to 'contemporary standards of decency.'"  Hudson v. McMillian, 503

16  U.S. 1, 8 (1992) (quoting Estelle v. Gamble, 429 U.S. 97, 103 (1976)).  "[E]xtreme deprivations

17  are required to make out a conditions-of-confinement claim."  Hudson, at 9.  Accordingly, "'only

18  those deprivations "denying the minimal civilized measure of life's necessities" are sufficiently

19  grave to form the basis of an Eighth Amendment violation.'"  Id. (internal citations omitted).

20         The second component is subjective.  "'Deliberate indifference' is [shown] only

21  when "the official knows of and disregards and excessive risk to inmate health or safety; the

22  official must both be aware of the facts from which the inference could be drawn that a

23  substantial risk of harm exists, and he must also draw the inference.'"  Clement v. Gomez, 298

24  F.3d 898, 904 (9th Cir. 2002) (quoting Farmer, at 837).  "Mere negligence is not sufficient to

25  establish liability.  Farmer v. Brennan, 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811

26  (1994).  Rather, the official's conduct must have been 'wanton,' which turns not upon its effect

1  on the prisoner, but rather, upon the constraints facing the official." Frost v. Agnos, 152 F.3d

2  1124, 1128 (9th Cir. 1998) (internal citation omitted).

3          With respect to the objective prong, prison inmates are entitled to "an adequate

4  level of personal safety," but "[n]ot every deviation from ideally safe conditions amounts to a

5  constitutional violation." Hoptowit v. Spellman, 753 F.2d 779, 784 (9th Cir. 1985).  The United

6  States Court of Appeals for the Ninth Circuit has held that "'slippery prison floors . . . do not

7  state even an arguable claim for cruel and unusual punishment.'" LeMaire v. Maass, 12 F.3d

8  1444, 1457 (9th Cir. 1993) (quoting Jackson v. Arizona, 885 F.2d 639, 641 (9th Cir. 1989)).

9  Absent evidence of that the leak at issue "exacerbated the inherent dangerousness of

10 already-existing hazards" or "rendered [plaintiff] unable to 'provide for [his] own safety,'" the

11 leak and the puddle it created is not the type of "extreme deprivation" that violates the Eighth

12 Amendment.  Osolinski v. Kane, 92 F.3d 934, 938 (9th Cir. 1996) (quoting Hoptowit v.

13 Spellman, 753 F.2d 779, 784 (9th Cir. 1985)); cf. Frost v. Agnos, 152 F.3d 1124, 1129 (9th Cir.

14 1998) (triable issue of fact on constitutional raised by pretrial detainee on crutches who was

15 required to shower in non-handicapped accessible shower and repeatedly fell and injured

16 himself).

17          There is no evidence that the leaky pipe and the puddle it created exacerbated an

18 existing safety hazard.  Even if it is true that the puddle created a "mosquito infestation," which

19 defendants dispute, there is no evidence that plaintiff suffered any cognizable injury caused by

20 mosquitoes.  Moreover, even viewed in the light most favorable to plaintiff the evidence does

21 not show that the puddle, which was six to eight inches wide, rendered plaintiff incapable of

22 providing for his own safety.  Although plaintiff did slip and fall in the puddle and suffered

23 injuries as a result, those injuries cannot be attributed to a condition that violation the Eighth

24 Amendment.  For these reasons, defendants are entitled to summary judgment.

25          In accordance with the above, IT IS HEREBY ORDERED that plaintiff's

26 September 28, 2012 motion for extension of time (ECF No. 69) is denied; and

1    IT IS HEREBY RECOMMENDED that:

2         1.  Defendants' September 27, 2012 motion for summary judgment (ECF No. 64)

3    be granted; and

4         2.  Plaintiff's September 28, 2012 motion for summary judgment (ECF No. 70) be

5    denied.

6         These findings and recommendations are submitted to the United States District

7    Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

8    days after being served with these findings and recommendations, any party may file written

9    objections with the court and serve a copy on all parties.  Such a document should be captioned

10   "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

11   objections shall be filed and served within fourteen days after service of the objections.  The

12   parties are advised that failure to file objections within the specified time may waive the right to

13   appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

14   DATED: July 16, 2013

15   _____

16

17                    ALLISON CLAIRE
                      UNITED STATES MAGISTRATE JUDGE
18

19

20

21

22

23   12
     mill1412.msj

24

25                              8

26